UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: : | CHAPTER 11 |
| TOUCH AMERICA HOLDINGS, INC., *et al.*[1] : | Jointly Administered |
| : | Case No. 03-11915 (KJC) |
| Debtor : | |
| BRENT WILLIAMS AS PLAN TRUSTEE : | |
| FOR TOUCH AMERICA HOLDINGS, INC., : | |
| AND ITS AFFILIATED DEBTOR ENTITES : | |
| Plaintiff, : | |
| : | Adv. Proc. No. 14-50664 (KJC) |
| v. : | (D.I. 10, 27) |
| AT&T CORP., AND ZAYO GROUP, LLC AS : | |
| SUCCESSOR BY MERGER TO 360 : | |
| NETWORKS CORPORATION : | |
| Defendants : | |

**MEMORANDUM AND ORDER DENYING MOTION TO DISMISS[2]**

**BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

Before me is AT&T Corporation's Motion to Dismiss the Trustee's Complaint for Declaratory Relief. The Trustee filed his first Complaint on September 3, 2014. AT&T Corporation ("AT&T") filed a Motion to Dismiss the Complaint on December 5, 2014 (D.I. 10).

---

[1] Touch America Holdings, Inc. and its affiliates (Entech LLC; Touch America Intangible Holding Company, LLC; Touch America, Inc.; Touch America Purchasing Company, LLC; American Fiber Touch, LLC, and Sierra Touch America, LLC) (together, the "Debtors") filed chapter 11 bankruptcy petitions on June 19, 2003.

[2] This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and venue is proper in this Court pursuant to 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and § 157(b)(2)(O).

1

Subsequently, the Trustee filed two amended complaints to add parties to the matter.[3] On January 30, 2015, AT&T filed a motion to dismiss the amended complaint (D.I. 27).[4] Pursuant to a scheduling order dated February 18, 2015 (D.I. 42), the parties set deadlines for responsive pleadings regarding the Motion to Dismiss and discovery. On August 20, 2015, I heard oral argument on AT&T's Motion to Dismiss.

For the reasons set forth below, AT&T's Motion to Dismiss is **DENIED**.

## I.    FACTUAL ALLEGATIONS

Touch America Holdings, Inc. ("TAH") was a Delaware holding company that owned and operated subsidiaries that were engaged in constructing and operating underground and wireless telecommunications systems and telecommunications conduits. In 1999 Touch America, Inc. ("Touch America") and AT&T entered into an agreement entitled "Contract for the Supply of Fiber Optic System(s) and Routes Upon Which the Systems are Constructed" (the "Fiber Optic Agreement"). The Fiber Optic Agreement was a construction contract pursuant to which Touch America agreed to build part of AT&T's "NexGen" telecommunications system between cities located in the Western and Midwestern United States.

Pursuant to the Fiber Optic Agreement, Touch America agreed to build for AT&T's use three conduits on a designated pathway between two cities that started at a "terminal" site in one city and ended at a "terminal" site in the other city (the "AT&T Conduits"). The Fiber Optic Agreement also permitted Touch America to build conduits "not to exceed three (3) in number" for Touch America's use on the same designated pathway that contained the AT&T Conduits, which the Fiber Optic Agreement referred to as "Builder Conduits." The Fiber Optic Agreement

---

[3] The Second Amended Complaint (D.I. 58) was filed to substitute a defendant and is referred to herein as the "Complaint."
[4] AT&T's original and amended motions to dismiss are referred to herein as the "AT&T Motion to Dismiss."

referred to the AT&T Conduits and the Builder Conduits, along with the fiber optic cable contained therein, as the "System."

The Fiber Optic Agreement did not address Touch America's construction of additional conduits that were *not* connected to the specific city terminals (i.e., conduits that were not part of the System). Between 2000 and 2003, Touch America built miscellaneous empty conduits in the ground, and along river crossings, that are adjacent to segments of the NexGen network (the "Stranded Conduits").

In June 2003, before the project could be completed, Touch America and its affiliates filed chapter 11 bankruptcy petitions. On October 6, 2004, the Court entered an Order confirming the Debtor's liquidating plan (the "Plan"), which included a settlement agreement between Touch America and AT&T (the "AT&T Settlement Agreement"). The Plan also created a liquidating trust and appointed the Trustee as an "estate representative" under 11 U.S.C. §1123 for the purpose of liquidating the trust's estate assets.

Pursuant to the AT&T Settlement Agreement, Touch America transferred to AT&T (among other things) all rights in its "Personal Property," and conveyed the remaining assets to the Trustee for the purpose of liquidating them thereafter. The AT&T Settlement Agreement defined "Personal Property" as personal property (including conduits) that "relate to the NexGen Assets." The AT&T Settlement Agreement defined "NexGen Assets" as the property that Touch America and/or AT&T used "in relation to the . . . Systems and Routes to be constructed or obtained pursuant to the Fiber Optic Agreement." The AT&T Settlement Agreement also defined "Personal Property" to include conduits owned by Touch America "on any of the Links."

Nine years after confirmation of the Plan, former employees of Touch America informed the Trustee that Touch America had installed conduits near or adjacent to partial segments of the

3

System constructed by Touch America under the Fiber Optic Agreement, that no one had used the Stranded Conduits in any business operations and that the Stranded Conduits were valuable in light of current demand for telecommunications services.

The Complaint asks this Court to declare that Touch America's Plan transferred Touch America's interest in the Stranded Conduits to the Trustee free and clear of any adverse claims of the Defendants.

## II.   MOTION TO DISMISS STANDARD

Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), governs a motion to dismiss for failing to state a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 407 (D. Del. 2007) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)). When reviewing a motion to dismiss, the court will construe the complaint "in the light most favorable to the plaintiff." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

The Third Circuit Court of Appeals has outlined a three-step process to determine the sufficiency of a complaint under *Twombly* and *Iqbal*:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch*, 662 F.3d at 221 (citations omitted).

The relevant record under consideration consists of the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). When considering a motion to dismiss, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa., ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1984)). The movant carries the burden of demonstrating that dismissal is appropriate. *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d at 408.

## III.    DISCUSSION

In its Motion to Dismiss, AT&T asserts that the "clear and unambiguous" language in the Sale Agreement[5] between the Debtors and AT&T, as well as language in the Debtors' Disclosure Statement and other filings, effected the sale of the Stranded Conduits (among other assets) as part of the overall settlement to resolve AT&T's approximately $130 million claim against the Debtors. AT&T argues that the Fiber Optic Agreement "recognized that in addition to the fiber

---

[5] The "Sale Agreement" refers to the Comprehensive Sale, Interpleader and Settlement Agreement, dated as of July 12, 2004, by and among AT&T and the Debtors, approved by this Court in the Confirmation Order (Main Case D.I. 2172).

5

optic network segments being constructed for and to be owned by AT&T, Touch America would simultaneously be constructing [additional] fiber optic network segments for use and ownership by the [Debtors], which would be *constructed next to and run parallel with the AT&T segments."* Sale Agreement, Fourth "Whereas" clause at 1 (emphasis added). AT&T claims that the Trustee's Complaint ignores the references to "additional conduits" in the relevant documents, all of which were sold to AT&T.

Motions to dismiss are not designed to resolve disputed facts or decide the merits of a dispute. *Intel Corp.*, 496 F. Supp. 2d at 407. As with any motion to dismiss, the Court must consider the factual allegations in the complaint in a light most favorable to the plaintiff and determine whether they give rise plausibly to a right to relief.

Here, the Trustee asserts that he was only recently made aware of the Debtors' Stranded Conduits, which have become valuable assets that should be liquidated for the benefit of the estate. The Trustee claims that the Stranded Conduits fall outside of the Fiber Optic Agreement, which did not address conduits constructed by Touch America on public rights of way. The Trustee contends that a close reading of the defined terms in the AT&T Settlement Agreement shows that the Stranded Conduits were not included in the assets sold or transferred to AT&T.

The Trustee has met the plausibility standard by asserting sufficient facts for the Court to draw a reasonable inference that the parties did not consider the Stranded Conduits as part of the settlement with AT&T. Therefore, the Motion to Dismiss is denied.

## IV.   CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that the Defendant's Motion to Dismiss is **DENIED**.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated:  October 26, 2015

cc:  Margaret Whiteman Greecher, Esquire[6]

---

[6] Counsel shall serve a copy of this Memorandum and Order upon all interested parties and file a Certificate of Service with the Court.