## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| TOUCH AMERICA HOLDINGS, INC., *et al.* | : | Jointly Administered |
| | : | Case No. 03-11915 (KJC) |
| Debtor | : | |

| | | |
|---|---|---|
| | : | |
| BRENT WILLIAMS AS PLAN TRUSTEE | : | |
| FOR TOUCH AMERICA HOLDINGS, INC., | : | |
| AND ITS AFFILIATED DEBTOR ENTITES | : | |
| | : | |
| Plaintiff, | | |
| | : | Adv. Proc. No. 14-50664 (KJC) |
| v. | : | (D.I. 112, 146, 183) |
| | : | |
| AT&T CORP., ZAYO GROUP, LLC AS | : | |
| SUCCESSOR BY MERGER TO 360 | : | |
| NETWORKS CORPORATION | : | |
| Defendants | : | |
| | : | |

## MEMORANDUM AND ORDER REGARDING DISCOVERY DISPUTES

Currently before the Court in this adversary proceeding are several outstanding discovery disputes.[1]  I held hearings and status conferences on the Discovery Disputes, made rulings on some matters and encouraged the parties to confer on remaining issues.  At my request, on October 7, 2015, the parties submitted letters describing the remaining unresolved issues (D.I.s 190, 191, 192 and 193).

---

[1] The disputes are set forth in docket item numbers:  112, 115, 117, 146, 153, 161, 163, 181, and 183 (the "Discovery Disputes").

In his Second Amended Complaint, the plaintiff, Brent Williams (the "Trustee") seeks a judgment declaring that the Trust owns certain conduits, known as the "Stranded Conduits" (i.e., empty telecommunications conduits placed in the ground by the Debtors while they were building other conduits, including those that were built for AT&T Corporation ("AT&T") for its "NexGen" network).[2] The Trustee argues that the Stranded Conduits were not transferred to the Defendants as part of various sales and settlements made during the Debtors' chapter 11 bankruptcy case and that the Trustee has the right to liquidate the Stranded Conduits free and clear of any interest claimed by the Defendants.

AT&T moved to dismiss the complaint, arguing that, pursuant to a post-petition settlement, the confirmed Plan and the sale-related documents clearly and unambiguously provide that *all* conduits related to the NexGen Project were sold to AT&T, including the Stranded Conduits.  By separate Memorandum and Order, I denied AT&T's motion to dismiss.

A.      Discovery Disputes Remaining Between the Trustee and AT&T Corp.

(1)      In a letter dated July 2, 2015, AT&T asked this Court to compel the Trustee to produce a complete copy of a document consisting of a chain of emails that had been partially redacted.  The Trustee claims portions of the emails were redacted due to the attorney-client privilege. AT&T argued that the Trustee waived any attorney-client privilege by selectively disclosing part of the emails.  I asked counsel to provide me with an un-redacted version of the email to evaluate *in camera*.  As a result, at the hearing on September 24, 2015, I ordered the Trustee to produce certain portions of the document related to older emails.  AT&T argues that its waiver argument remains to be decided; however, my decision on September 24, 2015

---

[2] The "Stranded Conduits" consist of 21 conduits listed on Exhibit A to the First Amended Complaint for Declaratory Relief (D.I. 21).

addressed this dispute in full. There was no privilege waiver, and the Trustee is not required to make any further production related to Document YCST00002468.

(2)    AT&T requested that the Trustee produce all written offers or purchase agreements with any third party related to the Stranded Conduits, as well as any written communications between the Trustee or his representatives and such third parties (the "Information about Third Party Offers"). The Trustee argues that any Information about Third Party Offers is protected by confidentiality agreements, work product doctrine and are irrelevant. The parties have continued negotiations on this issue, and on October 1, 2015, the Trustee produced the July 15, 2014 purchase agreement with the name of the purchaser and financial information redacted. AT&T argues that the Trustee must produce the redacted financial information.

Fed.R.Civ.P. 26, made applicable hereto by Fed.R.Bankr.P. 7026, permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and further provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). "The burden is on the party seeking discovery to 'explain how or why the [discovery] would be relevant to her claims.'" *In re Musicland Holding Corp.,* 424 B.R. 95, 100 (Bankr. S.D.N.Y. 2010) (quoting *Wright–Jackson v. HIP Health Plan,* No. 07 Civ. 1819 (DFE), 2009 WL 1024244, at *4 (S.D.N.Y. Apr.15, 2009)).

The litigation before me concerns whether the Stranded Conduits were transferred to AT&T or the other Defendants as part of sales and settlements made during the chapter 11 bankruptcy case. AT&T has not demonstrated that the Information about Third Party Offers is of consequence to resolution of the outstanding issues. Fed.R.Evid. 401 ("Evidence is relevant

if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). The Trustee is not required to make any further production related to the Information about Third Party Offers.

(3)    In July, AT&T deposed Mr. Hinrichs and Mr. Heath, who were identified by the Trustee as potential trial witnesses. The Trustee raised privilege objections and directed Mr. Hinrichs and Mr. Heath not to answer certain questions at the depositions. AT&T is reserving its rights to object to the Trustee's privilege assertions, as well as its right to seek production of documents created by Mr. Hinrichs and Mr. Heath. The parties now suggest that this matter is better resolved after the deadline for the Trustee's designation of experts has passed and AT&T has an opportunity to reassess the discovery dispute.

B.    <u>Motion by Zayo Group, LLC to Quash Deposition and for a Protective Order</u>

In 2003, the Debtors sold substantially all of their assets under Bankruptcy Code § 363, other than a fiber optic system known as the "NexGen Assets," to 360networks Corporation ("360networks"). On December 1, 2011, Zayo Group, LLC ("Zayo") acquired all of 360networks' stock and then merged with 360networks. Zayo intervened as a defendant in this adversary proceeding on the following theory: if the Stranded Conduits are not related to the NexGen Assets, and were not sold to AT&T or Sierra Pacific Power Company ("Sierra Pacific"), then the Stranded Conduits were sold to 360networks in 2003 as part of the "Purchased Assets" that included "all of Sellers' . . . assets . . . known or unknown . . . which are used in, held for use by, or related to in any manner the Relevant Business, but excluding all Excluded

Assets . . . ."[3] The Trustee disputes whether the Stranded Conduits were related to the Debtors'

"Relevant Business."

On June 12, 2015, the Trustee served Zayo with a Rule 30(b)(6) deposition notice

seeking examination on 13 topics, including topics relating to Zayo's conduct between 2011 and

2015 and its strategy with co-defendant Sierra Pacific. Zayo and the Trustee met and conferred

about the deposition topics by telephone and the Trustee served new deposition notices upon

Zayo on July 8, 2015 (containing 12 topics with 60 subparts) and July 22, 2015 (containing eight

additional topics). The parties met and conferred and Zayo filed the "Motion to Quash

Deposition and for Protective Order Limiting Trustee's 30(b)(6) Deposition Topics" (D.I. 146)

(the "Motion to Quash") on July 27, 2015.[4]

Zayo seeks protection from discovery related to two categories. First, the Trustee seeks

discovery about Zayo's knowledge or conduct related to its purchase of 360networks and the

routes, networks and conduits that Zayo identified as owning in maps, press releases, business

records, blog posts or elsewhere between 2011 and 2015. Zayo argues that its knowledge and

conduct in the time period of 2011 to 2015 is irrelevant to the central issue of whether the

Debtors sold the Stranded Conduits to 360networks *in 2003*. In response, the Trustee argues that

---

[3] "Purchased Assets" is defined in the Amended and Restated Asset Purchase Agreement by and among
360networks Corporation, Touch America Holdings, Inc. and The Subsidiaries of Touch America
Holdings, Inc. Listed on the Signature Page Hereto, dated as of September 10, 2003, (the "360networks
APA") at § 1.1, p. 15. "Relevant Business" and "Excluded Assets" are also defined in the APA at § 1.1,
p. 18 and p. 7, respectively.

[4] The Trustee argues that the Motion to Quash is untimely since Zayo knew of the deposition topics since
the June 12, 2015 notice of deposition. Zayo argues that the Motion to Quash is timely under
L.B.R. 7030-1(c) ("Any party seeking to quash a deposition must file a motion with the Court under
Fed.R.Civ.P. 26(c) or 30(d). If such a motion is filed at least one (1) business day before the scheduled
deposition, neither the objecting party, witness, not any attorney is required to appear at a deposition to
which a motion is directed until the motion is resolved."). I conclude that the motion is not untimely
under L.B.R. 7030-1, based upon the parties' continued attempts to resolve the dispute regarding the
deposition topics.

the 360networks APA is ambiguous and that the parties' course of conduct under the contract is entirely relevant to determine the parties' intent, particularly, whether the Stranded Conduits were part of the property sold to 360Networks under the APA.

The Trustee asserts that the 360networks APA is ambiguous and that extrinsic evidence regarding the parties' post-contract conduct is relevant to interpreting the contract. *See Old Colony Trust Co. v. City of Omaha,* 230 U.S. 100, 118, 33 S.Ct. 967, 972, 57 L.Ed. 1410 (1913) ("the practical interpretation of a contract by parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence."); *Fed. Ins. Co. v. Americas Ins. Co.,* 691 N.Y.S.2d 508, 512 (N.Y. App. Div. 1999) ("[T]he parties' course of performance under the contract is considered to be the 'most persuasive evidence of the agreed intention of the parties.'").  Although Zayo was not a party to 360networks APA, its conduct or knowledge relating to the Stranded Conduits is nonprivileged information that is relevant to the Trustee's claims.  However, the Trustee's discovery requests regarding Zayo's knowledge and conduct between 2011 and 2015 are overbroad and will be limited to the Stranded Conduits.  The Trustee should redraft numbers 1 through 12 and 20 of the Topics of Examination in the notice of deposition dated July 22, 2015 to limit the discovery requests to Zayo's knowledge and conduct between 2011 and 2015 relating only to the Stranded Conduits.

Second, the Trustee seeks discovery about Zayo's strategy and settlement in this adversary proceeding with former co-defendant and counterclaim plaintiff Sierra Pacific.[5]  Zayo argues that the quitclaim and settlement between Sierra Pacific and itself are privileged based

---

[5] Pursuant to an Order dated September 8, 2015, Sierra Pacific was dismissed without prejudice from this adversary proceeding (D.I. 179).

upon the parties' joint defense agreement and are irrelevant to the Trustee's claims.[6]   The

Trustee argues that the settlement information is not privileged and that details about the

consideration Sierra Pacific has received, or will receive, may bias or prejudice the testimony of

any Sierra Pacific witness in this case.

Zayo claims that its settlement with Sierra Pacific is privileged under Fed.R.Evid 408.[7]

However, this rule does not create a discovery privilege but, rather, addresses whether evidence

relating to settlement discussions are admissible at trial. Fed.R.Evid 408. *Sippel Dev. Co., Inc.*

*v. Western Surety Co.,* 2007 WL 1115207, *2 (W.D.Pa. Apr. 13, 2007).   Rule 408 specifically

allows settlement information to be used in asserting the bias or prejudice of a witness.

Fed.R.Evid. 408(b).

Zayo also asserts that the settlement agreement is protected by the community-of-interest

privilege.   [T]he community-of-interest privilege allows attorneys representing different clients

with similar legal interests to share information without having to disclose it to others." *In re*

*Teleglobe Commc'n Corp.*, 493 F.3d 345, 364 (3d Cir. 2007).   "It expands the reach of the

---

[6] On August 3, 2015, Zayo produced a redacted version of the Settlement Agreement, but has not provided information to the Trustee about all of the terms of the settlement. The Trustee asserts that he asked Zayo for a list of the section/topics which are redacted from the Settlement Agreement, but Zayo has not provided any such information.

[7] Fed.R.Evid. 408, entitled Compromise Offers and Negotiation, provides:
(a) **Prohibited Uses.** Evidence of the following is not admissible - - on behalf of any party - - either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>(1) furnishing, promising, or offering - - or accepting, promising to accept, or offering to accept - - valuable consideration in compromising or attempting to compromise the claim; and
>(2) conduct or a statement made during compromise negotiations about the claim - - except when offered in a criminal case or when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative or enforcement authority.
(b) **Exceptions.** The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation.

attorney-client privilege and the work product doctrine by providing that, under certain circumstances, the sharing of privileged communications with third parties does not constitute a waiver of the privilege." *In re Leslie Controls, Inc.,* 437 B.R. 493, 496 (Bankr. D.Del. 2010). "[M]embers of the community of interest must share at least a substantially similar legal interest." *Teleglobe*, 493 F.3d at 365. The privilege should not be used as a *post hoc* justification for impermissible disclosures, but should apply when attorneys, not clients, decide to share information in order to coordinate legal strategies. *Id.*

"The burden of establishing each of the elements of the privilege rests on the party asserting it." *In re Rivastigmine Patent Litig.,* No. 05-MC-1661, 2005 WL 2310995, * (S.D.N.Y. Sept. 22, 2005). *See also Teleglobe,* 493 F.3d 365, n. 22. To establish a community of interest privilege, the party must demonstrate that (1) the communication was made by separate parties in the course of a matter of common interest (or, in accordance with *Teleglobe*, a substantially similar legal interest); (2) the communication was designed to further that effort, and (3) the privilege was not otherwise waived. *In re Mortg. & Realty Trust,* 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997).

While Zayo and Sierra Pacific may have substantially similar legal interests, Zayo has not established that the settlement agreement is subject to any attorney-client privilege or work product privilege that should be expanded.

Accordingly, Zayo's request to quash the Trustee's discovery requests regarding the quitclaim and settlement between Zayo and Sierra Pacific is denied, and Zayo is required to respond to items 13 - 19 of the Trustee's Notice of Deposition dated July 22, 2015.

Conclusion

For the reasons set forth above, it is hereby **ORDERED** that:

(i)    With respect to the outstanding discovery disputes between AT&T and the Trustee, the Trustee is not required to make any further production related to Document YCST00002468; and the Trustee is not required to make any further production related to the Information about Third Party Offers; and

(ii)    Zayo's Motion to Quash is **GRANTED**, in part, and the Trustee's examination of Zayo's designated corporate representative regarding paragraphs 2- 12, and 20 of the Topics of Examination in the Deposition Notice dated July 22, 2015, will be limited to Zayo's knowledge or conduct with respect to the Stranded Conduits between 2011 and 2015; and

(iii)    Zayo's Motion to Quash is **DENIED**, in part, and the Trustee may examine Zayo's designated corporate representative regarding paragraphs 13 - 19 of the Topics of Examination in the Deposition Notice dated July 22, 2015.


BY THE COURT:

_____

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated:  October 26, 2015

cc:  Margaret Whiteman Greecher, Esquire[8]

---

[8] Counsel shall serve a copy of this Memorandum Order upon all interested parties and file a Certificate of Service with the Court.